UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| LEANNE O'NEAL, AND JOSEPH O'NEAL, IN-<br>DIVIDUALLY AND AS NEXT FRIENDS AND<br>GUARDIANS OF G.O., A MINOR,<br>    *Plaintiffs*, | )<br>)<br>)<br>) | 1:14-cv-00013-JMS-DKL |
| *vs.* | )<br>)<br>) | |
| BUMBO INTERNATIONAL TRUST F/K/A JONI-<br>BACH MANAGEMENT TRUST,<br>    *Defendant*. | )<br>)<br>) | |

## ORDER

Presently pending before the Court is Defendant Bumbo International Trust's ("Bumbo")

Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(2).  [Filing No. 87.]  For

the following reasons, the Court concludes that it has personal jurisdiction over Bumbo and **DE-**

**NIES** the motion.

## I.
### BACKGROUND

The Court draws the following factual background from the evidence submitted by the

parties.  Bumbo manufactures the Bumbo Seat, which is a seat used by infants.  In March 2009,

Plaintiffs Leanne O'Neal and Joseph O'Neal received a second-hand Bumbo Seat from a friend

while living in Georgia.  [Filing No. 103-3, at ECF p. 8.]  Plaintiffs moved from Georgia to Indi-

ana in May 2009.  [Filing No. 103-3, at ECF p. 4.]  In Indiana, Plaintiffs began occasionally

placing their infant daughter, G.O., in the Bumbo Seat.  [Filing No. 103-3, at ECF p. 9.]  On Jan-

uary 1, 2010, Plaintiffs placed G.O. in the Bumbo Seat on top of their kitchen counter while they

were making dinner.  [Filing No. 103-3, at ECF p. 14.]  G.O. fell from the Bumbo Seat and sus-

tained serious injuries.  [Filing No. 103-3, at ECF p. 14.]  Plaintiffs brought the instant suit against Bumbo, seeking damages arising from G.O.'s injuries.  [Filing No. 99, at ECF p. 15.]

Although this case was originally filed in the United States District Court for the Southern District of Texas, [Filing No. 1], and litigated there for more than two years, it was eventually transferred to this Court, [Filing No. 80].  The focus of the instant motion is whether the Court has personal jurisdiction over Bumbo, which requires the Court to assess Bumbo's contacts with Indiana.  The parties focus on different facts regarding Bumbo's connection to Indiana.  However, the facts that the Court finds determinative are not in dispute.

According to Bumbo's CEO, Bumbo "has not engaged in and does not engage in any business in Indiana."  [Filing No. 87-1, at ECF p. 1.]  Specifically, Bumbo does not have any offices or employees in Indiana, is not registered to do business in Indiana, does not advertise in Indiana, and "does not sell any products to end-consumers in Indiana nor does it supply products to any intermediaries in Indiana."  [Filing No. 87-1, at ECF p. 1.]  Bumbo, however, admits that its products are sold in the Indiana market, but argues that this is "the result of Bumbo's use of nationwide distributors—not based in Indiana—and the distributors' use of various retailers to sell Bumbo's products."  [Filing No. 88, at ECF p. 6.]

Plaintiffs do not specifically dispute any of these facts.  Instead, Plaintiffs focus on facts they contend indicate that "Bumbo had the requisite degree of knowledge or awareness that its product distribution system would disperse its products for retail sale either specifically to Indiana, or on a nation-wide basis."  [Filing No. 103, at ECF p. 10.]  First, Plaintiffs highlight Bumbo's concession that its products are sold in Indiana.  [Filing No. 103, at ECF p. 11.]  Moreover, Plaintiffs point to the fact that Bumbo uses a distributor to distribute Bumbo Seats to nationwide retailers, including Wal-Mart, Toys "R" Us, Babies "R" Us and Once Upon a Child.  [Filing No.

103-8, at ECF p. 3.]   Plaintiffs provide evidence that these retailers have several locations throughout central Indiana alone.  [Filing No. 103-6.]  Second, Plaintiffs point to evidence that Bumbo has overseen two separate recalls of the Bumbo Seat, which required working with its nationwide retailers to comply with the recall.  [Filing No. 103, at ECF p. 3-4; Filing No. 104.] Third and finally, Plaintiffs provide evidence that Bumbo received several complaints about the Bumbo Seat from individuals in Indiana.  [Filing No. 103-5, at ECF p. 2-4.]

The parties contest whether the foregoing is sufficient for this Court to exercise personal jurisdiction over Bumbo.

## II.
### APPLICABLE LEGAL STANDARD

When a defendant moves to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(2), "[t]he plaintiff bears the burden of showing that personal jurisdiction over the defendant exists."  *Claus v. Mize*, 317 F.3d 725, 727 (7th Cir. 2003).  When, as here, the Court "rules on a defendant's motion to dismiss based on the submission of written materials, without the benefit of an evidentiary hearing . . . the plaintiff 'need only make out a prima facie case of personal jurisdiction.'"  *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) (quoting *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002)).  Factual disputes, however, are resolved in the plaintiff's favor.  *Id.*

"A federal district court's personal jurisdiction over a defendant is established in a diversity-jurisdiction case . . . only so long as the defendant is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located."  *Northern Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014).  Indiana Trial Rule 4.4(A) serves as Indiana's long-arm provision and expands personal jurisdiction to the full extent permitted by the Due Process Clause.  *See LinkAmerica Corp. v. Cox*, 857 N.E.2d 961, 965-66 (Ind. 2006).  "Thus, the

statutory question merges with the constitutional one—if [Indiana] constitutionally may exercise personal jurisdiction over a defendant, its long-arm statute will enable it to do so." *Northern Grain*, 743 F.3d at 492.

"The federal constitutional limits of a court's personal jurisdiction in a diversity case are found in the Fourteenth Amendment's due-process clause." *Id.*  "[F]ederal constitutional law draws a sharp and vital distinction between two types of personal jurisdiction: specific or case-linked jurisdiction, and general or all-purpose jurisdiction." *Abelesz v. OTP Bank*, 692 F.3d 638, 654 (7th Cir. 2012).  "If the defendant's contacts are so extensive that it is subject to general personal jurisdiction, then it can be sued in the forum state for any cause of action arising in any place.  More limited contacts may subject the defendant only to specific personal jurisdiction, in which case the plaintiff must show that its claims against the defendant arise out of the defendant's constitutionally sufficient contacts with the state." *uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 425 (7th Cir. 2010).

### III.
#### DISCUSSION

The Court need only consider whether the constitutional due process standard is met such that the Court can exercise personal jurisdiction over Bumbo.  Indiana's long-arm statute does not require specific consideration because, as noted above, it expands personal jurisdiction to the full extent permitted by the Due Process Clause, *see LinkAmerica*, 857 N.E.2d at 965-66, "[t]hus, the statutory question merges with the constitutional one—if [Indiana] constitutionally may exercise personal jurisdiction over a defendant, its long-arm statute will enable it to do so," *North-*

*ern Grain*, 743 F.3d at 492.  Plaintiffs only contend that Bumbo is subject to specific jurisdiction, so the Court focuses solely on the specific-jurisdiction inquiry.[1]  [Filing No. 103, at ECF p. 2.]

Specific jurisdiction is established by showing that the defendant has "minimum contacts" with the forum state.  *See Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 549 (7th Cir. 2004).  Minimum contacts are met where "(1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities."  *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010) (citing *Burger King Corp v. Rudzewicz*, 471 U.S. 462, 472 (1985)).  If these two factors are met, the plaintiff must also demonstrate that "requiring [the defendant] to defend against this lawsuit in the state 'does not offend traditional notions of fair play and substantial justice.'"  *be2 LLC v. Ivanov*, 642 F.3d 555, 558 (7th Cir. 2011) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  The Court addresses each of the three requirements in turn.

### A.    Bumbo has Purposefully Availed Itself of the Privilege of Conducting Business in Indiana

The parties first dispute whether Bumbo has a sufficient connection with Indiana such that the exercise of personal jurisdiction is appropriate.  Bumbo argues that it has not purposefully availed itself of the privilege of conducting business in Indiana because Bumbo has no presence in Indiana and "does not sell products to any end-customers in Indiana."  [Filing No. 88, at ECF p. 5-6.]  Moreover, Bumbo explains that "the sale of Bumbo's products in the Indiana market are the result of Bumbo's use of nationwide distributors—not based in Indiana—and the distributors' use of various retailers to sell Bumbo's products."  [Filing No. 88, at ECF p. 6.]  Bum-

---

[1] Because Plaintiffs have not argued or alleged that the Court has general personal jurisdiction over Bumbo, they have "waived any general jurisdiction argument."  *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277 (7th Cir. 1997).

bo contends that it is analogous to the defendants in *Jennings* and *Walters v. Dollar General Corp.*, 2011 WL 759555 (S.D. Ind. 2011), as it is a "foreign manufacturer with no connection to Indiana." [Filing No. 88, at ECF p. 3-5.]  Lastly, Bumbo points out that "Plaintiffs' Bumbo Seat did not enter Indiana through Bumbo's distribution scheme," but instead through "the unilateral activity of Plaintiffs—*i.e.*, as a result of the Plaintiffs bringing it to Indiana when they moved." [Filing No. 88, at ECF p. 6.]

Plaintiffs respond that *Jennings* and *Walters* are inapposite because, unlike in the instant case, in those cases the plaintiffs failed to demonstrate that the defendants were aware that their products were being sold in Indiana.  [Filing No. 103, at ECF p. 10-11.]  Here, Plaintiffs contend, Bumbo (1) conceded that its products are sold in Indiana; (2) knows that it distributes its products through nationwide retailers that are located in Indiana; and (3) oversaw a recall of its Bumbo Seats from those retailers.[2]  [Filing No. 103, at ECF p. 10-12.]  Plaintiffs maintain that these contacts are sufficient to establish that Bumbo purposefully availed itself of the privilege of conducting business in Indiana.  [Filing No. 103, at ECF 10-13.]

Bumbo replies that it does not itself sell products in Indiana and that the fact that "Bumbo's products are sold by nationwide retailers that have store locations in Indiana" is insufficient to establish personal jurisdiction under *Jennings*.  [Filing No. 106, at ECF p. 2-3.]  The evidence, says Bumbo, only shows that it intended to exploit the United States market generally, not specifically the Indiana market.  [Filing No. 106, at ECF p. 3.]

"The purposeful-direction inquiry 'can appear in different guises,'" but "[i]n all cases the point of [it] is to 'ensure that an out-of-state defendant is not bound to appear to account for

---

[2] The parties dispute the relevance of the recalls to the personal-jurisdiction analysis.  The Court need not delve into this dispute, however, because it concludes that the other facts are sufficient to establish personal jurisdiction over Bumbo.  [Filing No. 103, at ECF p. 10-12; Filing No. 106, at ECF p. 3-4.]

merely random, fortuitous, or attenuated contacts' with the forum state." *Tamburo*, 601 F.3d at 702 (quoting *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008)). "The defendant's conduct and connection with the forum state must be substantial enough to make it reasonable for the defendant to anticipate that he could be haled into court there." *Northern Grain*, 743 F.3d at 492 (citing *Burger King*, 471 U.S. at 474).

Plaintiffs primarily rely on the so-called stream of commerce theory. Under this theory, a "forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980). The Supreme Court discussed the proper application of this principle at length in *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 120 (1987), but "a divided Supreme Court could not agree on the proper understanding of that theory," *Dehmlow v. Austin Fireworks*, 963 F.2d 941, 946-47 (7th Cir. 1992). The Seventh Circuit "has repeatedly endorsed the 'stream of commerce theory' and has resolved cases on the basis of it," and continues to do so given the divided nature of the Supreme Court's decision in *Asahi*. *See id.* at 946-47 (collecting cases).

The Court begins its analysis with the Seventh Circuit's decision in *Jennings*, as both parties contend that *Jennings* supports their position. [Filing No. 88, at ECF p. 4-5; Filing No. 103, at ECF p. 10-11.] In *Jennings*, the Seventh Circuit stated: "[i]f a defendant delivers products into a stream of commerce, originating outside the forum state, with the awareness or expectation that some of the products will be purchased in the forum state, that defendant may be subject to specific jurisdiction in the forum state." 383 F.3d at 550. The plaintiffs argued that this standard was met merely because the defendant "placed its products in the 'stream of commerce.'" *Id.*

The Seventh Circuit rejected such a broad application of the stream-of-commerce theory because the plaintiff did not produce any evidence that the defendant's products "were ever sold to retail customers in Indiana."  *Id.*  The fact that an Indiana company purchased one of the defendant's products was not enough either because that fact did not establish "*in what state or from whom this company purchased the product.*"  *Id.* (emphasis in original).  The bottom line in *Jennings* was that there was no evidence regarding "how the [product] in question got to Indiana, or if any other [of the defendant's] products have ever been sold there.  It is possible that the 'unilateral activity' of a third party, rather than the defendant's distribution scheme, landed the jack in Indiana, which is the very scenario that doomed the plaintiffs' case in *World-Wide Volkswagen*."  *Id.* at 551 (citation omitted).  In language much relied on by Bumbo in this case, the Seventh Circuit concluded: "With the free flow of commerce within the United States today, it may seem counterintuitive that a foreign manufacturer, such as [the defendant], who sells goods to a distributor in the United States should not be assumed to have the expectation that its goods may end up for sale in any one of the fifty states.  But the Supreme Court stressed in *World-Wide Volkswagen* that, although the United States was meant to be a common market, state lines are not irrelevant for jurisdictional purposes."  *Id.* (citation and quotation marks omitted).

      This case is readily distinguishable from *Jennings*.  Unlike in *Jennings*, Bumbo conceded that its United States distributors use retailers who sell Bumbo Seats *in Indiana*.  [Filing No. 88, at ECF p. 6 ("[T]he sale of Bumbo's products *in the Indiana market* are a result of Bumbo's use of nationwide distributors—not based in Indiana—and the distributors' use of various retailers to sell Bumbo's products.") (emphasis added).]  Therefore, unlike in *Jennings*, where there was no evidence that the defendant's products "were ever sold to retail customers in Indiana," and no evidence regarding "how the [product] in question got to Indiana," 383 F.3d at 550, Bumbo

acknowledges that its products are sold in Indiana, [Filing No. 88, at ECF p. 6].  Plaintiffs sub-mitted further evidence that these retailers have several locations in central Indiana alone.  [Filing No. 103-6.]  Therefore, contrary to the language from *Jennings* on which Bumbo relies, this is not a case where the Court "assume[s]" Bumbo has "the expectation that its goods may end up for sale in any one of the fifty states," 383 F.3d at 551, as Bumbo knows that its products will eventually be sold by retailers in Indiana.[3]

It is of no consequence that "Bumbo does not *directly* sell products to any end-customers in Indiana."  [Filing No. 88, at ECF p. 6 (emphasis added)].  Indeed, "[s]imilar arguments have been routinely rejected in [the Seventh] Circuit, as well as across the country."  *United Whole-sale LLC v. Traffic Jam Events*, 2012 WL 1988273, *2 (N.D. Ill. 2012) (collecting cases).  If, as here, Bumbo utilizes a distribution network for its Bumbo Seats "with the expectation that they will be purchased by consumers in [Indiana]," *Dehmlow*, 963 F.2d at 946, it has purposefully availed itself of the privilege of conducting business in Indiana.  *See Giotis v. Apollo of the Ozarks, Inc.*, 800 F.2d 660, 667 (7th Cir. 1986) ("[W]here the seller is at the head of a distribu-tion network and thus . . . has purposefully availed itself of the economic benefits of selling to buyers in distant forums . . . , [s]uch a seller, because of intervening levels of distribution, may not have mentally formed a purpose to sell its product to the particular individual buyer who is suing it, but the seller surely has purposefully chosen to sell generally to buyers in the forum state and reaps the economic benefit of doing so.  A seller at the head of a distribution network thus satisfies the requisite foreseeability of due process where it delivers its products into the

---

[3] For the same reasons, Bumbo's reliance on *Walters* is misplaced, as there was no showing in that case that the defendant "was aware its products would be sold in Indiana."  2011 WL 759555, at *5.

stream of commerce with the expectation that [these products] will be purchased by consumers in the forum state.") (citations and quotation marks omitted).

Bumbo's remaining argument does not alter this conclusion.  Bumbo relies on the fact that Plaintiffs' specific "Bumbo Seat did not enter Indiana through Bumbo's distribution scheme," but instead through "the unilateral activity of Plaintiffs—*i.e.*, as a result of the Plaintiffs bringing it to Indiana when they moved."  [Filing No. 88, at ECF p. 6.]  In arguing that this forecloses personal jurisdiction, Bumbo again relies on *Jennings*.  There, the Seventh Circuit stated: "[i]t is possible that the 'unilateral activity' of a third party, rather than the defendant's distribution scheme, landed the jack in Indiana, which is the very scenario that doomed the plaintiffs' case in *World-Wide Volkswagen*."  Jennings, 383 F.3d at 551 (quoting *World-Wide Volkswagen*, 444 U.S. at 298).

Read in isolation, this language appears to support Bumbo's position; Plaintiffs brought the Bumbo Seat at issue in this case to Indiana when they moved from Georgia.  [Filing No. 103-3, at ECF p. 4; Filing No. 103-3, at ECF p. 8.]  But in both *Jennings* and *World-Wide Volkswagen*, and unlike in this case, the defendant did not otherwise sell the product at issue in the state to which the product was taken.  In *Jennings*, personal jurisdiction was not proper in Indiana because the defendant's product was brought to Indiana by the plaintiff, and there was "no evidence that any of [the defendant's] products . . . were ever sold in Indiana."  383 F.3d at 550-51.  In *World-Wide Volkswagen*, personal jurisdiction was not proper in Oklahoma because the defendant's product (a car) was brought to Oklahoma by the plaintiff, but the defendant sold cars only in New York, New Jersey, and Connecticut.  444 U.S. at 298.  Here, the specific Bumbo Seat at issue was brought to Indiana from Georgia, but critically, Indiana is a state in which Bumbo otherwise sells Bumbo Seats.  [Filing No. 88, at ECF p. 6.]

The fact that Bumbo otherwise sells products in Indiana not only distinguishes *Jennings* and *World-Wide Volkswagen*, but makes this case analogous to *Giotis*, where personal jurisdiction over the defendant was proper.   In *Giotis*, the defendant fireworks manufacturer argued that Wisconsin courts did not have personal jurisdiction over it because the plaintiff "purchased the fireworks in Minnesota and unilaterally brought them into Wisconsin, where the injury occurred."   800 F.2d at 668.   The Seventh Circuit rejected this argument, explaining:

> [M]odifying the facts [of *World-Wide Volkswagen*], if plaintiff had instead bought his car in Atlantic City, New Jersey, and had been injured in West Hartford, Connecticut, in all likelihood he could have then sued the regional distributor in Connecticut, since the injury occurred within the scope of the sales efforts of the regional distributor.   It is this modified version of *World-Wide Volkswagen* that most clearly resembles the instant case.   Both Wisconsin and Minnesota are within the area into which [the defendants] purposefully directed its sales efforts, and therefore [the plaintiff's] transfer of the fireworks from Minnesota to Wisconsin is of no legal significance with respect to jurisdiction over defendants.

*Id.* As discussed above, Bumbo purposefully exploits the Indiana market by utilizing distributors with the expectation and knowledge that Bumbo Seats will be sold to customers in Indiana. Therefore, just as in *Giotis*, Plaintiffs "transfer of the [Bumbo Seat from Georgia to Indiana] is of no legal significance with respect to jurisdiction over [Bumbo]."   *Id.*

In the end, the goal of the purposeful-availment inquiry is to "ensure that an out-of-state defendant is not bound to appear to account for merely random, fortuitous, or attenuated contacts with the forum state."   *Tamburo*, 601 F.3d at 702 (citation and quotation marks omitted).   There is nothing random, fortuitous, or attenuated about Bumbo's use of a distribution network that it

knows results in the sale of Bumbo Seats in Indiana.[4]  Accordingly, the Court concludes that
Bumbo has purposefully availed itself of the privilege of conducting business in Indiana.

### B.    Plaintiffs' Claims Arise out of Bumbo's Indiana-Related Activities

Bumbo argues that even if it has sufficient contacts with Indiana, "Plaintiffs' claims have
no connection to those contacts."  [Filing No. 88, at ECF p. 6.]  Echoing its argument regarding
purposeful availment, Bumbo contends that Plaintiffs' claims regarding their Bumbo Seat did not
arise out of its connections with Indiana because Plaintiffs' Bumbo Seat was acquired in Georgia
and brought to Indiana by Plaintiffs' "unilateral act."  [Filing No. 88, at ECF p. 7.]  Moreover,
Bumbo contends that Plaintiffs' claims "do not arise out of or relate to the sale of Bumbo's
products in Indiana" because "the claims would be the exact same whether Bumbo seats were
sold in Indiana or not."  [Filing No. 88, at ECF p. 7.]

Plaintiffs respond that their claims arise out of Bumbo's contacts with Indiana because
they are "end users of a product, the Bumbo Seat, manufactured and sold by Bumbo . . .
throughout the United States, including in Indiana."  [Filing No. 103, at ECF p. 13.]  As a result
of Bumbo's distribution of its defective product, say Plaintiffs, G.O. sustained injuries that are
the focus of Plaintiffs' claims.  [Filing No. 103, at ECF p. 13.]  Plaintiffs maintain that this is suf-
ficient because "'[t]he precise causal relationship between contacts and claim [is] not important,
so long as the reciprocal relationship between the parties makes jurisdiction in the state foresee-a-

---

[4] The Court notes that, at times, Plaintiffs argue as if the sale of Bumbo Seats nationwide is suf-
ficient to establish personal jurisdiction over Bumbo in Indiana (or, for that matter, any state).
[*See, e.g.*, Filing No. 103, at ECF p. 10 ("The critical inquiry is whether Bumbo had the requisite
degree of knowledge or awareness that its product distribution system would disperse its prod-
ucts for retail sale either specifically to Indiana, *or on a nation-wide basis*.") (emphasis added).]
*Jennings* makes clear that this is insufficient.  *See* 383 F.3d at 551 ("[T]he Supreme Court
stressed in *World-Wide Volkswagen* that, although the United States was meant to be a common
market, state lines are not irrelevant for jurisdictional purposes.") (citation and quotation marks
omitted).

ble.'"  [Filing No. 103, at ECF p. 13 (second alteration in original) (quoting *Collazo v. Enter. Holdings, Inc.*, 823 F.Supp.2d 865, 873 (N.D. Ind. 2011))*.]  Lastly, relying on *uBID*, Plaintiffs contend that all that is required is that the out-of-state defendant avail themselves of doing business in the forum state and that the claims arise out of or relate to those business activities, and that is precisely what happened here.  [Filing No. 103, at ECF p. 8.]

Bumbo replies that the test adopted by the Seventh Circuit in *uBID* is not met in this case, as "the sale of Bumbo Seats by retailers in Indiana is not [even] the 'but-for' cause of the accident in question."  [Filing No. 106, at ECF p. 5.]  Moreover, Bumbo reiterates that "Plaintiffs' claims would be the exact same whether or not Bumbo seats were available for sale in Indiana."  [Filing No. 106, at ECF p. 5.]  Bumbo explains that "[i]f . . . the Plaintiffs did not move to Indiana, but instead moved to a place where Bumbo Seats are not sold, and the incident occurred there, Plaintiffs would still be making the same claims against Bumbo.  Whether or not Bumbo seats are available for purchase where the accident occurred is completely irrelevant for this purpose."  [Filing No. 106, at ECF p. 5.]

The Seventh Circuit recently discussed in *uBID* the proper test for determining whether a plaintiff's claim "arises out of" the defendant's contacts with the forum state.  The Seventh Circuit explained that due process requires that the claim and contacts be related so that companies do not "have to conduct interstate business without the confidence that 'transactions in one context will not come back to haunt them unexpectedly in another.'"  *uBID*, 623 F.3d at 429 (quoting *RAR*, 107 F.3d at 1278).  Other circuits determine whether the claims and contacts are sufficiently related by applying but-for causation or proximate causation principles, but the Seventh Circuit found these approaches over- and under-inclusive, respectively.  *See id.* at 429-30.  Contrary to Bumbo's interpretation of *uBID*, [Filing No. 106, at ECF p. 5], however, the Seventh

Circuit did not adopt a "middle-ground" causation approach; it held that looking to causation at all is misguided. *uBID*, 623 F.3d at 430 (adopting the Third Circuit's approach, which held that "[t]he precise causal relationship between contacts and claim [is] not important"). Instead of looking to causation, relatedness should be examined by focusing "on the 'tacit quid pro quo that makes litigation in the forum reasonably foreseeable:' out-of-state residents may avail them-selves of the benefits and protections of doing business in a forum state, but they do so in ex-change for submitting to jurisdiction in that state for claims arising from or relating to those ac-tivities." *Id.* (quoting *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 322 (3d Cir. 2007)); *see Collazo*, 823 F.Supp.2d at 873 ("[T]he precise causal relationship between contacts and claim [is] not important, so long as the reciprocal relationship between the parties makes jurisdiction in the state foreseeable.") (alteration in original) (citation and quotation marks omitted).

Applying the *uBID* test to the instant case, the Court concludes that Plaintiffs' claims arise out of Bumbo's business activities in Indiana. As set forth above, Bumbo knowingly en-gages the Indiana market by using distributors and retailers that sell Bumbo Seats in Indiana. [Filing No. 88, at ECF p. 6.] It does not, as Bumbo argues, matter whether these activities were the cause of Plaintiffs' claims. *See uBID*, 623 F.3d at 430. Instead, it only matters whether Bumbo's Indiana business activities—*i.e.*, selling Bumbo Seats through distributors and retailers in Indiana—makes litigation against Bumbo in Indiana relating to those activities reasonably foreseeable. *See id.* Such litigation is clearly foreseeable. Bumbo knows that its method of dis-tribution leads to its Bumbo Seats being sold to Indiana consumers, thus it should readily expect that legal claims regarding the Bumbo Seat may be brought in Indiana. [Filing No. 88, at ECF p. 6.]

In short, Bumbo avails itself "of the benefits and protections of doing business" in Indiana by utilizing a distributor that it knows will sell Bumbo Seats through retailers in Indiana. *See uBID*, 623 F.3d at 430. The quid pro quo flowing from Bumbo's exploitation of the Indiana market for Bumbo Seats is that it "submit[s] to jurisdiction in [Indiana] for claims arising from or relating to those activities." *Id.*

The test adopted in *uBID* and its application to this case also demonstrate why Bumbo's arguments regarding the fact that Plaintiffs' particular Bumbo Seat was not purchased in Indiana miss the mark. There need not be a particular causal relationship between Plaintiffs' specific Bumbo Seat and Bumbo's contacts with Indiana. *uBID* instructs that there need only be a relationship between Bumbo's business activities in Indiana and Plaintiffs' claims, *see id.* at 430-31, which—given that the focus of each is the Bumbo Seat—is met.

For similar reasons, Bumbo is simply incorrect that "[w]hether or not Bumbo seats are available for purchase where the accident occurred is completely irrelevant." [Filing No. 106, at ECF p. 5.] To assess whether litigation is reasonably foreseeable in a given forum, the Court must first examine whether the out-of-state defendant availed itself "of the benefits and protections of doing business in [the] forum state." *uBID*, 623 F.3d at 430. Therefore, and as made clear in the Court's above discussion of *Giotis*, *Jennings*, and *World-Wide Volkswagen*, it certainly matters whether Bumbo Seats are available for purchase in the forum state.[5] *See, e.g.*, *Giotis*, 800 F.2d at 668 ("Both Wisconsin and Minnesota are within the area into which [the defendants] purposefully directed its sales efforts, and therefore [the plaintiff's] transfer of the

_____

[5] The fact that Plaintiffs' claims specifically involve the very product that establishes Bumbo's contacts with Indiana distinguishes this case from *Collazo*, contrary to Bumbo's position otherwise. [Filing No. 88, at ECF p. 6.] Specific personal jurisdiction was not met in *Collazo* because the plaintiff failed to show that the injuries of which she complained were related to the defendant's contacts with Indiana. *See* 823 F.Supp.2d at 873-74. But that is simply not the case here.

fireworks from Minnesota to Wisconsin is of no legal significance with respect to jurisdiction over defendants.").

Accordingly, the Court concludes that Plaintiffs' claims arise out of Bumbo's Indiana-related activities.[6]

### C. Exercising Personal Jurisdiction over Bumbo Would Not Offend Traditional Notions of Fair Play and Substantial Justice

Finally, the Court turns to whether the exercise of personal jurisdiction over Bumbo would offend traditional notions of fair play and substantial justice.   "The concerns that the Supreme Court has identified for this final inquiry are the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in efficiently resolving controversies, and the shared interest of the states in furthering fundamental substantive social policies." *uBID*, 623 F.3d at 432 (citing *Burger King*, 471 U.S. at 476).  The Court need not delve into these factors in detail because Bumbo does not present any argument regarding them, let alone attempt to undermine Plaintiffs' specific arguments regarding why exercising personal jurisdiction over Bumbo is proper.

In support of their position, Plaintiffs point to the fact that the burden on Bumbo would be small given that Bumbo is a foreign entity that has already defended similar suits in the United States, and that Indiana has a strong interest in adjudicating this dispute given that Plaintiffs are Indiana residents who were injured in Indiana by a product that is sold in Indiana.  [Filing No. 103, at ECF p. 14-15.]  The Court agrees with Plaintiffs that these two factors support their

---

[6] The Court notes that at least one other district court has concluded that it has specific jurisdiction over Bumbo for similar reasons as those articulated herein.  *See Lamm ex rel. Doherty v. Bumbo, Bumbo Ltd.*, 2008 WL 2095770, *4-10 (N.D. Cal. 2008).

position.  First, although Bumbo is a South African entity, inconvenience to it is not a dispositive factor given the relative ease with which modern technology and transportation allow it to litigate anywhere in the United States.  *See Burger King*, 471 U.S. at 474 (modern transportation and communication lead to conclusion that it is not usually unfair or too burdensome for party to defend itself in a state where it conducts business); *Bd. of Trustees, Sheet Metal Workers' Nat'l Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031, 1037 (7th Cir. 2000) ("Easy air transportation [and] the rapid transmission of documents . . . make it easy these days for cases to be litigated with little extra burden in any of the major metropolitan areas.").  At worst, any other state would be nearly as inconvenient for Bumbo as Indiana.  Second, Indiana has a strong interest in litigating this dispute given that Plaintiffs are Indiana citizens, the injury occurred in Indiana, and Bumbo Seats are sold in Indiana.  Lastly, there is no indication that the exercise of personal jurisdiction here would undermine any substantive social policies.

For these reasons, the Court finds that exercising personal jurisdiction over Bumbo does not offend the traditional notions of fair play and substantial justice.

## IV.
### CONCLUSION

Plaintiffs have made the requisite prima facie showing that the Court has personal jurisdiction over Bumbo.  Accordingly, Bumbo's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(2) is **DENIED**.  [Filing No. 87.]


04/14/2014

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**<u>Distribution via ECF only to all counsel of record</u>**